IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARION LAMONT LEE,                    )
                                      )
            Petitioner,               )
                                      )
      v.                              )        Case No. 1:20-cv-00191-AGF
                                      )
WILLIAM STANGE,                       )
                                      )
            Respondent.               )

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se Petition of Darion Lamont Lee, a current inmate at the Potosi Correctional Center in Mineral Point, Missouri, for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Butler County Circuit Court for one count of first-degree domestic assault for which he was sentenced to twenty (20) years' imprisonment.

In his federal habeas petition, Petitioner raises twenty-three (23) grounds for relief. ECF No. 1. For the reasons set forth below, habeas relief will be denied.

### Background

**A.     Trial**

The charges against Petitioner stemmed from a domestic dispute that occurred between Petitioner and Petitioner's then girlfriend ("LMS" or "Victim") on or about March 5, 2015. Petitioner was living with Victim when he became upset that his body wash had been moved. Petitioner's anger evolved into physical abuse, and Petitioner

1

beat Victim for several hours with his fists, a broom handle, and a curtain rod.  Petitioner

was arrested and charged with one count of first-degree domestic assault.

The evidence at trial showed the following, as summarized by the Missouri Court

of Appeals in Petitioner's direct appeal:

> In 2014, Victim was living with her teenage children in a house, on
> the outskirts of the nearby town, about a quarter of a mile away from her
> stepfather (Stepfather) and mother.  Victim's two children, her son (Son)
> and her daughter (Daughter), spent every other week with their father and
> Victim, respectively.

> That summer, Victim met [Petitioner] through an internet chat room.
> They exchanged phone numbers and spoke to each other for about a month.
> At that point, [Petitioner] surprised Victim by asking her to pick him up in
> a nearby city.  He said that he was going to spend the weekend with Victim.
> She had not known [Petitioner] was coming or even met [Petitioner] before
> that surprise visit.  He extended his weekend visit indefinitely, which
> Victim recognized was "not normal," but she nevertheless allowed
> [Petitioner] to stay.

> At first, their relationship was good. It began to change after a few
> weeks.  [Petitioner] began to verbally abuse Victim by arguing with her and
> calling her names.  [Petitioner] also began to control Victim by demanding
> her phone, asking to whom she was speaking and refusing to let her leave
> [his] presence.  Little things, like something being moved inside the house,
> would trigger him.  He would accuse Victim of cheating on him, then
> apologize later and say he wouldn't do it again.

> Around Halloween, [Petitioner] again accused Victim of cheating on
> him and trying to leave the room to call somebody else.  [Petitioner] choked
> Victim and pushed her down, injuring her "tail bone really bad[.]"  This
> was the first time [Petitioner] physically abused Victim.  Accompanied by
> [Petitioner], Victim went to the doctor.  [Petitioner] told Victim that she
> could not tell the doctor and staff about [Petitioner] hurting her.
> [Petitioner] said Victim "had to tell them something else."  When
> questioned by the doctor, Victim said she had slipped on Daughter's
> skateboard and fallen.

> After the incident in October, Victim felt like she had to walk "on
> eggshells" around [Petitioner] because she did not know what was going to

2

set him off.  He would go into what she called "episodes," accusing Victim and demanding that she tell him the truth.  [Petitioner] began to keep Victim's phone and require her to converse on speaker phone so [he] could listen.  He also kept Victim's keys, money, and ID.  [Petitioner] "barricaded" the house by covering the windows, pushing the couches up against the doors and putting a stick or knife in the door to keep it closed.  Victim testified that it was not easy to get away, and that if [Petitioner] caught her, it would be worse.  When Victim started working in home healthcare, [Petitioner] would accompany her and stay in the car, keeping her phone.  There was an incident in the car in January that Victim described as "very bad" without further details.  Victim testified that she was never away from [Petitioner].  When Victim's children came to stay at the house, [Petitioner] made sure that Victim covered herself up by wearing long sleeves.  Victim testified that [Petitioner] never hit her on the face, but "loved to punch" her in her head and ear.

On March 5, 2015, [Petitioner]'s anger was triggered when he discovered a bottle of body wash had been moved.  [Petitioner] told Victim that she was going to quit making him look like a fool and that "tonight was going to be the night."  Victim was unable to calm [Petitioner] down.  He started hitting Victim and punching her on her left side as she curled up on the couch, trying to protect herself.  At first, [Petitioner] hit Victim with his fists on her head, stomach, thigh and arm.  [Petitioner] then grabbed a metal broomstick and continued hitting Victim until the broomstick broke in half.[1]  [Petitioner] struck Victim on her arm, and up and down her thigh with the broomstick.  This continued for a couple of hours while [Petitioner] screamed at Victim, called her names and paced back and forth.  [Petitioner] also grabbed a curtain rod and struck Victim with that.  Finally, [Petitioner] got on top of Victim and started choking her until Victim succeeded in kicking [Petitioner] off of her.  [Petitioner] then told Victim to "lay down and go to bed[.]"  She did as she was told.

The next day, Son came to the house unexpectedly to pick up a CD.  Victim took the opportunity to whisper to Son to get Stepfather.  After Son left, [Petitioner] confronted Victim about what she had told Son.  At first, Victim denied telling Son anything.  When she saw [Petitioner] "hadn't put that knife back in the door" however, she "ran like hell out the door" without bothering to put on any shoes, even though there was snow on the ground.  Victim ran past Son to Stepfather's house because she was afraid that [Petitioner] might beat her again more severely.

---

[1]      A bent and broken metal broomstick was later found in a trash pile in the yard by Stepfather.

3

When Victim got to Stepfather's house, she told him to get [Petitioner] out of the house.  She neither told Stepfather about the beating Victim had endured the previous night nor reported it to law enforcement when they responded to the scene that day.  Victim stayed at Stepfather's house that night.

The following day (March 7, 2015), Stepfather observed some of the bruising on the part of Victim's arm that was visible below her short-sleeved shirt.  Stepfather asked Victim if [Petitioner] had hit her.  Initially, Victim denied it because she was scared and ashamed.  Ultimately, Victim told Stepfather everything.  She showed Stepfather the bruises, and he took photographs.  There were bruises on Victim's arm, back, and one the size of a watermelon on her left buttock and thigh.  Stepfather then called the sheriff's department to report the abuse.

Victim testified that she "couldn't even put jeans on or hardly sit" as a result of the injuries [Petitioner] had inflicted.  Victim had problems sitting, leaning and standing up because of the bruises and swelling.  She went to the emergency room on March 7th, which was a Saturday.  It wasn't until "towards the middle of that next week" that she was able to walk or sit without problems.  The bruising did not go away for weeks.  Victim's hearing was also affected.  She experienced ringing in her ear, testifying that "it was like I was in a barrel[.]"  Victim had a CT scan conducted as a result.[2]

During [Petitioner]'s case-in-chief, he did not testify.  [Petitioner's] counsel called the investigating deputy, Julie Dacy, as a witness.  Deputy Dacy testified that she made contact with Victim after learning of the alleged domestic assault, took her statement, and observed bruising to her body.  The deputy saw bruising on the back of Victim's shoulder, down her arm, and up her thigh.  Deputy Dacy described the bruising as "pretty severe," and opined, "Honestly, I don't understand how she could have sat with the bruising as bad as it was."  Deputy Dacy also testified that Victim said she suffered hearing loss as a result of [Petitioner] hitting her, and they discussed the need for Victim to seek medical treatment.

ECF No. 17-3 at 2–6.

---

[2]     Defense counsel objected to any further testimony regarding the results of the CT scan, and no further testimony was offered.

At the conclusion of the trial, the jury found Petitioner guilty of domestic assault in the first degree as charged, and the Butler County Circuit Court sentenced him to twenty (20) years' imprisonment.

### B.    Direct Appeal

On direct appeal, Petitioner raised two points of error.  ECF No. 17-1 at 10–11. First, Petitioner contended that the trial court abused its discretion when it admitted evidence of uncharged physical abuse of Victim, which he contended was inadmissible propensity evidence.  Second, he asserted that the trial court should not have overruled his motion for judgment of acquittal.  Petitioner argued that that there was insufficient evidence presented at trial to establish that Petitioner caused Victim "serious physical injury" as required by the statutory definition of domestic assault in the first degree.  The Missouri Court of Appeals for the Southern District rejected both arguments and affirmed the trial court's conviction.  ECF No. 17-3 at 2.

On the first point, the Court of Appeals found that the evidence of Petitioner's prior physical abuse of Victim was not admitted for an inadmissible purpose.  Instead, the court found that this evidence (1) was used to establish Victim's state of mind during the subject incident; and (2) was used to explain Victim's delay in reporting the abuse in response to Petitioner's introduction of evidence that cast doubt on Victim's credibility. The court reasoned that because this evidence was admitted for these non-propensity purposes, its admission was not "clearly against the logic of the circumstances," and it denied Petitioner's first point.  ECF No. 17-3 at 11–12.

5

On the second point, the Court of Appeals found that the record contained "sufficient evidence from which the jury could have reasonably found beyond a reasonable doubt that Victim suffered . . . serious physical injury." *Id.* at 14. It found that Victim's injuries were "protracted" as required by the statutory definition of serious physical injury because her injuries to her thigh impaired her ability to sit and to walk for a week and took multiple weeks to fully heal. *Id.* at 15. The Court concluded that this evidence was sufficient for a jury to conclude that the Victim suffered a serious physical injury, and it denied Petitioner's second point.

### C. State Post-Conviction Proceedings

Following denial of his direct appeal, Petitioner filed a pro se motion for post-conviction relief asserting a variety claims for ineffective assistance of trial counsel. Petitioner then filed an amended motion with the assistance of appointed counsel asserting several claims of ineffective assistance of trial counsel. Petitioner's amended motion alleged that trial counsel was ineffective for: (1) failing to adequately prepare for trial and fully investigate the allegations against Petitioner; (2) failing to file pretrial motions to prevent the admission of prior bad acts evidence at trial, specifically evidence related to Petitioner's alleged drug use with Victim; (3) failing to object to Victim's testimony of uncharged physical abuse by Petitioner; (4) failing to object to allegedly prejudicial testimony from trial witness, Deputy Dacy, during cross-examination; (5) failing to object to or impeach Victim's testimony that Petitioner had barricaded Victim within her home; (6) stating in a question to a witness that Petitioner was holding Victim

captive; and (7) failing to make a proper *Batson* challenge when the prosecution used five of its six peremptory strikes on male members of the venire panel.  ECF No. 26 at 93–96.

The motion court held an evidentiary hearing, and Petitioner's trial counsel was the only testifying witness.  ECF No. 24-2.  The motion court issued an Order and Judgment overruling Petitioner's amended motion for post-conviction relief.  ECF No. 26 at 119–32.

On Petitioner's first claim, the motion court found that Petitioner failed to meet his burden to plead facts to establish that Petitioner's trial counsel was ineffective for not calling certain witnesses or conducting a reasonable investigation.  The motion court noted that Petitioner had the burden to plead facts showing who the witnesses were, what they would have testified to, and how such evidence would have provided Petitioner with a valid defense.  But the motion court found that Petitioner's pleadings and the testimony at the hearing failed to meet that burden.  ECF No. 26 at 124–25.

On Petitioner's second claim, the motion court found that Petitioner's trial counsel's failure to object to testimony regarding Petitioner's prior drug use with Victim did not constitute ineffective assistance of counsel.  The motion court credited Petitioner's trial counsel's testimony at the motion hearing that Victim's testimony was unexpected.  Petitioner's trial counsel also explained that, as a matter of trial strategy, he did not object to Victim's testimony because it was brief and he feared that requesting a curative instruction would have brought greater attention to the issue.  The motion court also noted that Petitioner failed to provide a basis on which an objection to the subject testimony would have been sustained.  *Id.* at 126.

7

On Petitioner's third claim, the motion court found that Petitioner's trial counsel had submitted a motion in limine requesting that the trial court exclude evidence of Petitioner's prior bad acts of uncharged physical assaults of Victim.  The court further found that, even though there was some testimony regarding this prior alleged abuse, such testimony was not a "blow by blow" description that would have violated the trial court's order on Petitioner's motion in limine.  The motion court explained that Petitioner failed to overcome the presumption that his trial counsel's failure to object to testimony of these prior bad acts was for strategic purposes.  The motion court also found that the Victim's testimony regarding the uncharged instances of prior abuse "did not alter the outcome of the trial nor was it in violation of the order of the Court, and, [sic] thus the failure to object did not prejudice [Petitioner]."  *Id.* at 128.

On Petitioner's fourth claim, the motion court again found that Petitioner was unable to overcome the presumption that Petitioner's trial counsel's failure to object to the prejudicial testimony of Deputy Dacy was done for strategic purposes.  The motion court also found that Petitioner had not presented any evidence that such an objection would have been sustained.  *Id.* at 129.

On Petitioner's fifth claim, the motion court found that Petitioner's arguments that his trial counsel had failed to impeach a witness was not a proper basis for a charge of ineffective assistance.  *Id.* at 130 (citing *McClain v. State*, 686 S.W.2d 879 (Mo. Ct. App. 1985)).  The motion court credited Petitioner's trial counsel's testimony at the motion hearing that the one-word difference between Victim's previous testimony and her trial

testimony was too minor an issue to focus on and that he believed impeaching the Victim for such a minor discrepancy could have irritated the jury.  ECF No. 26 at 130.

On Petitioner's sixth claim, the motion court found that the harmful effect of Petitioner's trial counsel's use of the phrase "holding her captive" when questioning Deputy Dacy was debatable but did not contradict Victim's testimony that Petitioner had barricaded her within her home.  The motion court also noted that Petitioner failed to allege that the outcome of the trial would have been different if Petitioner's trial counsel had not asked the question.  *Id.* at 131.

On Petitioner's seventh claim, the motion court found again that Petitioner's trial counsel's choice not to object to the composition of the jury was a strategic choice.  The empaneled jury included eight (8) females and four (4) males.  The motion court further noted that Petitioner had provided no evidence that having a jury with more males would have changed the outcome of his trial.  *Id.* at 131–32.

Petitioner appealed the motion court's denial of post-conviction relief, but only as to his claim of ineffective assistance of trial counsel for failing to object to the testimony about Petitioner's previous drug use.  ECF No. 17-4 at 11.  The Court of Appeals rejected Petitioner's point on appeal.  ECF No. 17-6 at 2.  It explained that it was not convinced that an objection to the trial testimony would have succeeded because the drug use evidence was relevant to provide the jury with a complete picture of Petitioner's and Victim's relationship.  *Id.* at 6.  The court also concluded that the motion court did not commit clear error when it found that trial counsel's failure to object had been part of a reasonable trial strategy.  Because the references to Petitioner's prior drug use were brief

9

and isolated and other evidence against Petitioner clearly established his guilt, the Court

of Appeals affirmed the motion court and denied Petitioner post-conviction relief.  *Id.* at

7.

> **D.**     **Federal Habeas Petition**

Petitioner's amended petition for federal habeas relief raises twenty-three (23)

grounds for relief.  Petitioner claims:

> (1)     The trial court erred in admitting evidence of Petitioner's prior physical abuse of Victim;
>
> (2)     The trial court erred in overruling Petitioner's motion for judgment of acquittal at the conclusion of evidence;
>
> (3)     Ineffective assistance of trial counsel for failing to object to the introduction of evidence of Petitioner's drug use with Victim;
>
> (4)     Ineffective assistance of trial counsel for failing to challenge the felony information charging him with domestic assault in the first degree;
>
> (5)     Ineffective assistance of trial counsel for failing to file a motion to dismiss the felony information;
>
> (6)     Ineffective assistance of trial counsel for failing to file a motion to suppress Petitioner's statement to police after Petitioner's arrest for an unrelated incident;
>
> (7)     Ineffective assistance of trial counsel for failing to file pretrial motions requesting the court to pay for child care for single parents who are selected to serve jury duty;
>
> (8)     Ineffective assistance of trial counsel for failing to depose any State witnesses;
>
> (9)     Ineffective assistance of trial counsel for failing to file a motion to exclude evidence of Petitioner's previous bad acts;
>
> (10)     Ineffective assistance of trial counsel for failing to make a fair-cross-section challenge when the venire panel included only one African-American;

(11)   Prosecutorial misconduct for failing to provide Petitioner possession and inspection of material evidence relating to his criminal case;

(12)   Ineffective assistance of trial counsel for refusing to allow Petitioner to testify on his own behalf;

(13)   Ineffective assistance of trial counsel for failing to investigate the criminal charges and therefore failing to introduce evidence and witnesses who would have testified for Petitioner;

(14)   Ineffective assistance of trial counsel for failing to introduce evidence to rebut prosecution's evidence at trial;

(15)   Ineffective assistance of trial counsel for failing to call witnesses who could testify for Petitioner and refute Victim's testimony of prior arguments and physical abuse;

(16)   Ineffective assistance of trial counsel for failing to challenge the jury pool selection procedures for Butler County, Missouri;

(17)   Ineffective assistance of appellate counsel for failing to preserve on appeal a fair cross-section claim regarding the Bulter County, Missouri, jury selection procedure;

(18)   Ineffective assistance of trial counsel for failing to object when Juror 36 was not allowed to give a complete response during voir dire;

(19)   Ineffective assistance of appellate counsel for failing to preserve on appeal a claim that Juror 36 was not allowed to give a complete response during voir dire;

(20)   Ineffective assistance of trial counsel for failing to preserve certain issues for appellate review;

(21)   The trial court erred in admitting photographs of Victim's injuries taken by Victim's Stepfather;

(22)   Ineffective assistance of trial counsel for failing to preserve a *Batson* issue related to the prosecutor's use of five of six peremptory strikes on males in the venire panel; and

(23)   Ineffective assistance of appellate counsel for failing to raise on appeal a claim that the trial court erred in allowing the prosecutor to use five out of six peremptory strikes on males in the venire panel.

11

ECF No. 14 at 1–21.

Respondent asserts that all of Petitioner's claims are without merit.  Respondent also asserts that Petitioner's Claims 4–23 are procedurally defaulted and therefore should not be addressed on the merits.  ECF No. 17.

Petitioner acknowledges that Claims 4–23 are procedurally defaulted.  But Petitioner argues that "his default should be excused because his counsel failed to present th[ese] claim[s] for review in the state court."  ECF No. 14 at 3–21.

## Legal Standard

A federal court may provide habeas relief to a prisoner who has been convicted by a state trial court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a claim was adjudicated on the merits in state court proceedings, federal habeas relief will only be granted if the state court adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"[C]learly established Federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions.  And an "unreasonable application of" those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in

12

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 575 U.S. 312, 316 (2015) (citations omitted).

**Discussion**

**A.     Non-Defaulted Claims**

Of Petitioner's twenty-three (23) claims, only Claims 1, 2, and 3 were raised on appeal or post-conviction relief proceedings in state court.  The Court will examine each of Petitioner's non-defaulted claims in turn before examining his claims that have been procedurally defaulted.

> **1.     Admission of Victim's Testimony Regarding Prior, Uncharged Physical Abuse by Petitioner Did Not Render His Trial Fundamentally Unfair.**

In Claim 1, Petitioner asserts that the trial court "abused its discretion in admitting, over Petitioner's objection, evidence of his prior uncharged acts of misconduct related to his physical abuse of 'LMS.'"  ECF No. 14 at 1.  He asserts that evidence of these acts was "neither logically nor legally relevant."  *Id.*  Petitioner argues in his traverse that admission of this evidence denied him a fair trial because it "permitted the jurors to indulge their worst impulses, and to convict not based upon [Petitioner]'s guilt of the crime charged, but because of his alleged prior abusive conduct towards the victim." ECF No. 22 at 13.  Petitioner asserts that the admission of prior bad acts evidence is only permissible in Missouri to show either motive, intent, absence of mistake or accident, common scheme or plan, or identity.  *Id.* (citing *State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993)).  He argues that the trial court's admission of the testimony was error

because the prosecution did not request its admission for any of those purposes.  *Id.*

Respondent presents several persuasive counterarguments for denial of relief. First, Respondent explains that "federal habeas corpus relief does not lie for errors of state law" and that the Court's authority is "limited to deciding whether a conviction violates the Constitution, law, or treaties of the United States."  ECF No. 17 at 13 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) and 28 U.S.C. § 2254(a).  On this basis, Respondent argues that this Court cannot reverse a state court evidentiary ruling unless "petitioner shows that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair."  *Id.* at 14 (citing *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)).  Respondent argues that Petitioner is unable to meet this standard.

Respondent also cites to Missouri case law indicating that evidence of prior, uncharged abuse of a victim by defendant is permissible to provide the jurors with a complete and coherent picture of events, and in particular can be admitted "to explain a witness's delay in reporting a matter to police."  *Id.* at 15 (citing *State v. Miller*, 372 S.W.3d 455, 474 (Mo. banc 2012)).  Respondent cites to the Court of Appeals decision from Petitioner's direct appeal finding that the evidence of prior abuse was relevant at trial to explain Victim's hesitance to report it.  Respondent concludes that the trial court and the Missouri Court of Appeals rulings were not fundamentally unfair and therefor Petitioner's request for relief on Claim 1 must fail.

The Court agrees with Respondent that federal habeas relief is not appropriate when the alleged error is based on an error of state law.  Instead, the Court is limited to

granting habeas relief where the petitioner's conviction violates federal law or the United States Constitution.  *See* 28 U.S.C. § 2254.  To succeed on this claim, Petitioner must show that the admission of evidence of prior abuse was so egregious that it rendered his trial fundamentally unfair such that it violated his right to due process.

Petitioner has not shown that the trial court's admission of Victim's testimony regarding previous uncharged abuse by Petitioner violated Missouri law.  Contrary to Petitioner's suggestion, *State v. Bernard* does not stand for the proposition that the five enumerated exceptions Petitioner lists are the exclusive grounds for a court to admit prior bad acts evidence.  849 S.W.2d at 13 ("Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant.").  Missouri courts, including the Supreme Court of Missouri, have permitted evidence of prior bad acts "to present a complete and coherent picture of the events that transpired," including "to explain a witness's delay in reporting a matter to the police."  *Miller*, 372 S.W.3d at 474; *see also State v. Sanders*, 481 S.W.3d 907, 913–14 (Mo. Ct. App. 2016).  Moreover, the testimony was brief and consistent with the trial judge's ruling on the motion in limine.

The Court of Appeals found that the admission of Petitioner's prior bad acts was done for a non-propensity purpose, namely "to show the escalation of Victim's fear of [Petitioner] and explain why she did not immediately report the charged abuse that occurred on March 5th."  ECF No. 17-3 at 11.  The Court of Appeals further explained that because Petitioner's defense at trial was premised on undermining Victim's credibility for failing to report the prior abuse and delaying her reporting of the March 5

15

abuse, the evidence of prior abuse was admissible "to explain the delay in Victim's reporting of the charged abuse and to provide a more complete and coherent picture of the circumstances." *Id.* at 11–12.  The record supports this conclusion.

Petitioner has failed to demonstrate that the state courts' decisions regarding the admissibility of prior bad acts evidence was contrary to, or an unreasonable application of, clearly established federal law.  Petitioner has also failed to show that the admission of evidence of uncharged prior abuse was so egregious as to render his trial fundamentally unfair.  Therefore, the Court will deny Petitioner habeas relief on Claim 1.

> **2.     The Trial Court Did Not Err When It Denied Petitioner's Motion for Judgment of Acquittal at the Close of Trial.**

In Claim 2, Petitioner claims that the trial court erred when it overruled his motion for judgment of acquittal at the close of evidence.  Petitioner asserts that the state failed to prove beyond a reasonable doubt that Petitioner caused serious injury to Victim.  ECF No. 14 at 2.  He argues that the Victim's testimony that she was unable to resume normal activities like walking, sitting, or leaning for about a week after the injury was insufficient to show that Victim suffered a serious injury under Missouri law.

Respondent argues that the state's evidence was sufficient to show that Victim suffered serious injury.  In support, Respondent cites to Missouri law defining serious injury for the purposes of domestic assault as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."  ECF No. 17 at 17 (citing Mo. Rev. Stat. § 565.002(6) (2000)).  Respondent further argues that protracted means "something short of permanent

but more than of short duration." *Id.* (citing *State v. Lanier*, 985 S.W.2d 377, 379 (Mo. Ct. App. 1999)).  Respondent also cites the Court of Appeals' decision on Petitioner's direct appeal, which found that there was sufficient evidence presented at trial for the jury to find that Victim suffered serious physical injury.

The Court finds that the state courts' rulings were not contrary to, nor an unreasonable application of, clearly established federal law.  Nor can the Court find that the state courts' determinations that the evidence was sufficient to show Victim suffered serious physical injury were an unreasonable determination of the facts.  Applying appropriate state law, the Missouri Court of Appeals found that the evidence at trial was sufficient for a reasonable jury to find that Victim's suffered serious injury as defined by Missouri law.  Petitioner only makes conclusory statements that there was insufficient evidence presented at trial to show that Victim was seriously injured and provides no federal authority to support his contention that the state court decisions were in violation of the law.  The Court will therefore deny Petitioner habeas relief on Claim 2.

> **3.  Petitioner's Claim of Ineffective Assistance of Trial Counsel for Failing to Object to Testimony of Petitioner's Prior Drug Use Is Insufficient to Support Habeas Relief.**

In Claim 3, Petitioner claims ineffective assistance of trial counsel for failing to object to testimony of Petitioner's prior drug use.  Petitioner asserts that he was prejudiced by this testimony because a reasonable probability exists that the trial court would have sustained such an objection had it been raised.  He does not cite case law to support this assertion.  He also argues, without explanation, that there is a reasonable probability that the outcome of his trial would have been different if such an objection

were raised and sustained.  ECF No. 14 at 2–3.  In his traverse, Petitioner cites to the

Missouri statute defining the penalty for domestic assault, first degree, and argues that

drug use is not an element of the crime of domestic assault.  On this basis, he concludes

that the admission of his prior drug use at trial was error because it was not a necessary

element of the crime to which he was charged.  ECF No. 22 at 17–18.

Respondent argues that the Court of Appeals was correct in finding that

Petitioner's trial counsel acted reasonably in declining to object and also in finding that

Petitioner was not prejudiced by his counsel's failure to object.  ECF No. 17 at 18–19.

Respondent also asserts that, in reviewing claims of ineffective assistance of trial counsel

already rejected by the state courts on the merits, habeas review is "doubly" deferential

regarding trial counsel's competence.  *Id.* at 20 (citing *Harrington v. Richter*, 562 U.S.

86, 105 (2011).[3]  Respondent further argues that Petitioner's trial counsel used Victim's

drug use to attack her credibility.

The Sixth Amendment guarantees a criminal defendant the right to effective

assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To show

ineffective assistance of counsel, "a [petitioner] must show that counsel's performance

was deficient," and "that the deficient performance prejudiced [his] defense."  *Id.* at 687.

---

[3]      Petitioner asserts that the "doubly deferential" standard from *Harrington* is only
applicable "where a federal court reviews an unexplained state court decision under the
'unreasonable application' clause of § 2254(d)(1)."  ECF No. 22 at 8.  However, the
*Harrington*'s reference to the "doubly deferential" standard is used solely to establish the
extreme difficulty of showing that the state court's application of *Strickland* was
unreasonable under § 2254(d).  *Harrington* does not limit the deference given to trial
counsel to cases in which the state court determination is unexplained, as Petitioner
suggests.

When "[c]onsidering an attorney's performance, [the court] must indulge a strong presumption that the conduct was reasonable, and the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).  In other words, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (citation omitted).  To show prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 753 (citations omitted).

Petitioner has failed to show that his trial counsel was ineffective for failing to object to testimony regarding his prior drug use.  The Court of Appeals reasonably found that Petitioner failed to show an objection to the limited testimony of his prior drug use would have been meritorious.  ECF No. 17-6 at 6.  It concluded that the testimony was relevant to two elements of the charged offense: (1) that Victim and Petitioner were adults who were or had been in a continuing relationship of romantic or intimate nature, and (2) that Petitioner knew of this relationship.  The Court of Appeals reasoned that such testimony "was admissible to present a complete and coherent picture of the events that transpired including the [V]ictim's relationship with [Petitioner] and the probative value of the evidence used to impeach the [V]ictim." *Id.*  The Court of Appeals also correctly found that the motion court did not clearly err in accepting that Petitioner's trial counsel's choice not to object was part of a sound trial strategy.  Petitioner has not established that

his trial counsel's failure to object to this testimony was such a fundamental error to constitute of violation of his Sixth Amendment right to counsel, nor has he established that he was prejudiced by his trial counsel's inaction.  The Court will deny Petitioner habeas relief on Claim 3.

### B.    Procedurally Defaulted Claims

Under the doctrine of procedural default, a federal court reviewing a habeas petition may not consider the merits of a claim not fully presented to the state courts unless the Petitioner shows both cause for the default and prejudice resulting therefrom. *See, e.g.*, *Murphy v. King*, 652 F.3d 845, 848–49 (8th Cir. 2011).  Both parties agree that Petitioner's Claims 4–23 are procedurally defaulted.  Petitioner states that his procedural default should be excused because his "counsel failed to present" each claim for review in the state court.  ECF No. 14.

Petitioner's arguments regarding the cause for default of Claims 4–23 rely heavily on the Supreme Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012).  The Supreme Court had previously held in *Coleman v. Thompson* that an attorney's errors in a postconviction proceeding do not qualify as cause for a habeas petitioner's default.  501 U.S. 722, 754–55.  But the Court in *Martinez* held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective."  566 U.S. at 17.  Missouri does not permit individuals to raise ineffective assistance of trial counsel claims on direct

20

appeals but instead requires such claims to be raised for the first time in post-conviction relief proceedings. *Franklin v. Hawley*, 879 F.3d 307, 312 (8th Cir. 2018); *see also* Mo. Sup. Ct. R. 29.15(a). The *Martinez* Court clarified that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here." 566 U.S. at 16. Under the principals outlined in *Martinez*, Petitioner can show cause for his default only as to the failure of his post-conviction relief counsel to raise ineffective assistance of trial counsel claims. *See Franklin*, 879 F.3d at 313. This Court is barred from hearing any other type of procedurally defaulted claim. *See* 28 U.S.C. § 2254(d).

> ### 1. Petitioner's Claims 11, 17, 19, 21, and 23 Are Not Covered Under the *Martinez* Exception Because They Do Not Raise Claims of Ineffective Assistance of Trial Counsel.

Petitioner's Claims 11, 17, 19, 21, and 23 raise claims of prosecutorial misconduct, ineffective assistance of Petitioner's counsel on direct appeal, and trial court error. Claim 11 for prosecutorial misconduct and Claim 21 for trial court error are claims that should have been raised on direct appeal and are not appropriately raised on federal habeas review. Claims 17, 19, and 23 are claims for ineffective assistance of Petitioner's counsel on direct appeal. The Eighth Circuit has declined to extend the *Martinez* exception to claims of ineffective assistance of counsel on direct appeal. *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014). Petitioner's conclusory statements that his default of these claims should be excused because his counsel failed to present the claims for review in the state court, standing alone, are not sufficient to show cause for his default of these claims under *Martinez*. The Court will therefore not address the merits of Claims 11, 17, 19, 21, and 23 as Petitioner has not established adequate cause for default.

21

### 2. Claims 9, 13, 14, and 22 Are Procedurally Defaulted Because They Were Not Raised on Appeal from the Motion Court's Denial of Petitioner's Motion for Post-Conviction Relief.

Petitioner's Claims 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 18, 20, and 22 all raise claims of ineffective assistance of trial counsel that could only have been raised in Petitioner's motion for post-conviction relief.  Mo. Sup. Ct. R. 29.15(a).  Of these, Claims 9, 13, 14, and 22 were raised in Petitioner's amended motion for post-conviction relief.  *See* ECF No. 26 at 93–96.  None were raised on Petitioner's appeal from the motion court's denial of post-conviction relief.  Petitioner fails to provide the Court with evidence or argument to show cause for his default of these claims, and therefore the Court will not reach the merits of Claims 9, 13, 14, and 22.

### 3. Petitioner's Remaining Procedurally Defaulted Claims Do Not Provide a Basis for Habeas Relief.

Plaintiff's remaining procedurally defaulted claims—Claims 4, 5, 6, 7, 8, 10, 12, 15, 16, 18, and 20—were not raised by Petitioner's post-conviction relief counsel in his amended motion under Mo. Sup. Ct. R. 29.15.  Each of these claims raise allegations of ineffective assistance of trial counsel.  These claims thus fall within the *Martinez* exception, and therefore Petitioner's post-conviction relief counsel's failure to raise these claims may constitute cause for Petitioner's default.

But to show cause for his default, Petitioner must show that his appointed counsel at the post-conviction relief stage was ineffective under the *Strickland* standard for not raising these claims.  *Martinez*, 566 U.S. at 14.  He must also "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to

say that the prisoner must demonstrate that the claim has some merit." *Id.* (citation omitted).  The Court will briefly review each of Petitioner's remaining claims on the merits.

### a.   Claim 4

In Claim 4, Petitioner asserts ineffective assistance of trial counsel for failing to challenge the felony information charging Petitioner with domestic assault in the first degree.  ECF No. 14 at 3.  Petitioner argues that his trial counsel's failure to challenge the information made his counsel unable to fully prepare for trial.  Petitioner makes no citation to the record, nor does Petitioner support his position with legal authority. Petitioner also fails to explain in Claim 4 what exactly he believes his trial counsel should have done in relation to the information.  On the issue of prejudice, Petitioner merely speculates that trial counsel's failure to "file meaningful motions" could have helped with his defense strategy.  Such conclusory statements are insufficient to show a reasonable probability that the result of his trial would have been different had Petitioner's trial counsel made some challenge to the felony information.  On this record, the Court finds that Petitioner's trial counsel was not ineffective for failing to challenge the felony information.  Petitioner's post-conviction counsel was not ineffective for failing to raise this non-meritorious claim with the motion court.  The Court will deny Petitioner habeas relief on Claim 4.

### b.   Claim 5

Petitioner's Claim 5 asserts that his trial counsel was ineffective for failing to file a motion to dismiss the felony information.  According to Petitioner, the information "was

insufficient and did not in or of itself contain the necessary date of the incident or element required to adequately notify Petitioner of the overall event" for which he was charged. ECF No. 14 at 4.  But Petitioner does not demonstrate how filing such a motion would have changed the outcome of his trial.  As explained by Respondent, the record indicates that the felony information that charged Petitioner with domestic assault in the first degree did include an approximate date of the offense and alleged facts that, if proved, would establish each element of the charge.  *See* ECF No. 24-1 at 16–17, 20–21, and 24. Petitioner has not explained, beyond conclusory statements, how the felony information was insufficient such that a motion to dismiss would have been granted.  On this record, the Court cannot find that Petitioner's trial counsel's failure to file a motion to dismiss the felony information constituted ineffective assistance, and Petitioner's post-conviction counsel was not ineffective for failing to raise this non-meritorious claim with the motion court.  The Court will deny Petitioner habeas relief on Claim 5.

### c.    Claim 6

In Claim 6, Petitioner asserts that his trial counsel was ineffective for failing to move to suppress statements made by Petitioner to police after his arrest for an "unrelated incident."  Petitioner states that he was arrested on March 6, 2015, for an unrelated incident but cites to no evidence in support.  ECF No. 14 at 4.  Petitioner makes no citation to the record indicating what his statements were, when they were made, or how they were used at trial to secure the jury verdict against him.  Petitioner cannot claim that the result of his trial would be any different if his trial counsel had moved to suppress Petitioner's statements to police.  Indeed, the Court is unable to determine what, if any

statements, were admitted as evidence in his trial, and Petitioner has not provided any such citation to the record.  Nor has he shown how he was prejudiced from such statements.  On this record, the Court cannot conclude that Petitioner's trial counsel was ineffective for failing to move to suppress Petitioner's statements to police, and Petitioner's post-conviction counsel was not ineffective for failing to raise this non-meritorious claim with the motion court.  The Court will deny Petitioner habeas relief on Claim 6.

### d.     Claim 7

In Claim 7, Petitioner asserts that his trial counsel was ineffective for failing to file motions requesting that the trial court pay for childcare for single parents selected to serve on the jury.  Petitioner states, without citation to the record, that a venire panel member was stricken from the venire panel because she was a single parent who could not find appropriate childcare.  ECF No. 14 at 5.  The Court notes that Petitioner is correct that a venire panel member was excused when she brought her infant with her to the courthouse.  ECF No. 25 at 16:15–17:11.  Even so, Petitioner cites to no authority indicating that such a motion would have been granted if it were filed.  Additionally, Petitioner provides no evidence or argument that the result of his trial would have been different if this single venire member was not excused.  On this record, the Court cannot find that Petitioner's trial counsel was ineffective for failing to file the motion as Petitioner suggests, and Petitioner's post-conviction counsel was not ineffective for failing to raise this non-meritorious claim with the motion court.  The Court will deny Petitioner habeas relief on Claim 7.

e.      **Claim 8**

In Claim 8, Petitioner claims that his trial counsel was ineffective for failing to depose any of the state's trial witnesses.  Petitioner claims that, had his trial counsel deposed these witnesses, he would have been better able to prepare a trial defense and would have had more opportunity to impeach these witnesses at trial.  ECF No. 14 at 5–6. Respondent argues that Petitioner has not alleged what specific information his trial counsel could have learned through deposing these witnesses nor how that information would have helped in Petitioner's defense.  ECF No. 17 at 28.

Petitioner's trial counsel testified in the post-conviction relief proceeding that he decided not to depose Victim because he believed he had sufficient information regarding her potential trial testimony after she testified at Petitioner's Preliminary Hearing and that he does not do depositions in every case.  ECF No. 24-2 at 13:11–15.  Petitioner's trial counsel also testified that Petitioner had given assurances that Victim would not appear at trial to testify, so trial counsel was concerned that memorializing her testimony via deposition could have allowed prosecutors to present her deposition testimony at trial if Victim was found unavailable to testify.  *Id.* at 13:16–15:4.  Petitioner has not suggested what impeaching information trial counsel would have obtained from depositions of any other witnesses.  Petitioner has not provided argument or evidence sufficient to overcome the presumption that his trial counsel was exercising sound trial strategy in choosing not to depose the state's witnesses.  On this record, the Court cannot find that Petitioner's trial counsel was ineffective, and Petitioner's post-conviction counsel was not ineffective

for failing to raise this non-meritorious claim with the motion court.  The Court will deny

Petitioner habeas relief on Claim 8.

### f.      Claim 10

In Claim 10, Petitioner claims that his trial counsel was ineffective for failing to

file a motion "for Cross Section of Juror Qualification."  ECF No. 14 at 7.  The Court

interprets Petitioner's claim as alleging that his trial counsel failed to raise a fair-cross-

section claim regarding the racial make-up of his venire panel, namely that the venire

panel included only one (1) African-American and forty-five (45) Caucasians.  Petitioner

cites to no evidence or authority in support of his position.

Respondent argues that Petitioner's trial counsel would not have been able to raise

a fair-cross-section claim based solely on the racial diversity of Petitioner's single venire

panel.  ECF No. 17 at 29.  Rather, to sustain a fair-cross-section claim, Petitioner's trial

counsel would have been required to show that the jury selection process in Butler

County systematically excluded black jurors.  *See State v. McFadden*, 391 S.W.3d 408,

429 (Mo. 2013).  Petitioner has provided no evidence to support such a claim, and

therefore he has failed to show that his trial counsel was ineffective in failing to raise it.

Petitioner's post-conviction counsel was also not ineffective for raising this non-

meritorious claim with the motion court.  The Court will therefore deny Petitioner habeas

relief on Claim 10.

### g.      Claim 12

In Claim 12, Petitioner claims that his trial counsel was ineffective for failing to

allow Petitioner to testify on his own behalf at trial.  Petitioner states that, had he been

allowed to testify, there is a reasonable probability that the outcome of his trial would have been different.  However, Petitioner provides no information regarding the content of his potential testimony, nor does he explain how some specific testimony would have been reasonably likely to change the outcome of his trial.  Moreover, the record belies his contention that he was prevented from testifying.  During trial, the trial court asked Petitioner about his decision not to testify, and Petitioner himself replied that he was deciding not to testify:

> MR. TILLEY:        . . . It is my understanding that my client is going to elect not to testify.  I think we need to make a record.
>
> THE COURT:        Sure.  Mr. Lee, that's entirely your decision with your attorney.  Again, this isn't anything that I am asking you about because I think that you should do anything different, it is just that I want to make it clear for the record that my understanding today is that you are choosing not to testify in this case and that's your right.  Is that correct?
>
> DEFENDANT LEE:        Yes, sir.
>
> THE COURT:        Is that your decision today?
>
> DEFENDANT LEE:        Yes, sir.
>
> THE COURT:        Is there anything else?  Do you need any additional time to talk to Mr. Tilley about that decision?
>
> DEFENDANT LEE:        No.

ECF No. 25 at 143:20–144:14.  On this record, Petitioner cannot now claim that his trial counsel was ineffective for preventing him from testifying on his own behalf.  Petitioner's post-conviction counsel was not ineffective for raising this non-meritorious claim with the motion court.  The Court will deny Petitioner's habeas relief on Claim 12.

h.      **Claim 15**

In Claim 15, Petitioner claims that his trial counsel was ineffective for failing to

call witnesses at trial to refute testimony regarding arguments and abuse that occurred

between Victim and Petitioner before the March 5 incident for which he was charged.  In

particular, Petitioner claims that Samantha Hanley was willing to testify that he was in a

relationship with her and staying with her on Halloween 2014 and therefore could not

have assaulted Victim on that day.  Additionally, Petitioner claims that Jennifer Lee was

willing to testify that Petitioner was incarcerated in the St. Clair County jail from

December 19, 2014 to the end of January 2015 and therefore could not have assaulted

Victim at the end of January.  Petitioner states that had these witnesses been called to

testify, there is a reasonable probability that the result of his trial would have been

different.  ECF No. 14 at 11–12.

Respondent argues that Petitioner's trial counsel was not ineffective for failing to

call these witnesses because the prospective testimony would not have provided

Petitioner with a defense to the charges that he assaulted Victim in March 2015.

Respondent also argues that having Jennifer Lee testify that Petitioner was not with

Victim from December 2014 to January 2015 because he was incarcerated would have

been harmful to Petitioner's case, and therefore Petitioner's trial counsel was not

ineffective for failing to call this witness.  ECF No. 17 at 32.  In Petitioner's hearing

before the motion court, Petitioner's trial counsel testified that he contacted some

potential witnesses Petitioner suggested would provide him supporting testimony.

However, Petitioner's trial counsel explained that "when we really looked into the nature

29

of what they had to say[,] I was concerned that any testimony that they had would be hurtful, not helpful." ECF No. 24-2 at 11:9–13; *see also id.* at 11:20–12:18 (Petitioner's trial counsel testifying that the potential witnesses could not have definitively stated that Petitioner was not present during the alleged previous assaults on Victim and that their testimony would likely have constituted character evidence that would have opened the door to evidence of Petitioner's previous conviction in Illinois for felony domestic battery).

Petitioner has not met his burden to establish that his trial counsel was ineffective for failing to call these potential witnesses. Petitioner was charged with domestic assault in the first degree for assaulting Victim on or about March 5, 2015. While calling Petitioner's suggested witnesses to refute testimony related to his alleged prior abuse of Victim in October 2014 and January 2015 could have undermined Victim's testimony, it would not have refuted her testimony regarding the abuse that occurred on March 5, 2015. Additionally, according to Petitioner's trial counsel, introducing these witnesses for purposes of undermining Victim's testimony of previous abuse could have opened to the door to testimony regarding Petitioner's prior incarceration. Such testimony could have done more harm to his case than good, an issue of which Petitioner's trial counsel was acutely aware. Petitioner has failed to overcome the strong presumption that his trial counsel avoided calling these witnesses as a matter of sound trial strategy. As such, Petitioner has not shown that his trial counsel's failure to call these witnesses constitutes ineffective assistance under *Strickland*. Petitioner's post-conviction counsel was also not

ineffective for failing to raise this non-meritorious claim with the motion court.  The Court will deny Petitioner relief on Claim 15.

### i.    Claim 16

In Claim 16, Petitioner essentially makes the same fair-cross-section claim he raised in Claim 10.  For the same reasons presented above, the Court will deny Petitioner habeas relief on Claim 16.

### j.    Claim 18

In Claim 18, Petitioner claims that his trial counsel was ineffective for failing to object when a juror was not allowed to provide a complete response to certain questions during voir dire.  In particular, he states that Juror 36 was asked several questions to which he did not provide a "full and complete response."  ECF No. 14 at 14.  Petitioner states that Juror 36 was twice asked if he could be fair and impartial, and responded each time "I feel that I can."  *Id.*  The relevant portion of the trial transcript reads:

> Q.    Now the other question that may be a follow up at some point since you were a law enforcement officer can you set aside those feelings that you have as a law enforcement officer and judge this case solely on the facts as it comes from the witness chair?
>
> VENIREPERSON NO. 36:        I feel that I can.
>
> . . .
>
> Q.    So you can lay aside anything that you have on [Butler County Prosecutor] Mr. Barbour and be fair and impartial?
>
> VENIREPERSON NO. 36:        I feel like I can, yes.

ECF No. 25 at 30:24–31:4; 34:7–10.  Respondent argues that Petitioner has failed to provide any argument or evidence for why his trial counsel's failure to ask Juror 36 rehabilitative follow-up questions would have changed the result of Petitioner's trial.

The Court notes that Juror 36 was not empaneled as a member of Petitioner's petite jury. *Id.* at 73:19-74:25 (listing empaneled jurors without listing Juror 36).  Given that Juror 36 was not a member of the empaneled jury at Petitioner's trial, Petitioner's trial counsel's failure to ask follow-up questions of Juror 36 during voir dire cannot provide a basis for a claim of ineffective assistance.  In any event, there is nothing regarding Juror 36's responses that appears at all to be incomplete.  Petitioner's post-conviction counsel was not ineffective for failing to raise this non-meritorious claim with the motion court.  As such, the Court will deny Petitioner habeas relief on Claim 18.

### k.      Claim 20

In Claim 20, Petitioner claims that his trial counsel was ineffective for not preserving certain issues for appellate review.  However, Petitioner's list of issues relates to the trial court's denial of certain of Petitioner's motions or instances in which the trial court overruled Petitioner's counsel's objections during trial.  ECF No. 14 at 15–17.  If anything, Petitioner has shown that his trial counsel did preserve these issues for appeal by lodging proper objections and filing proper motions on Petitioner's behalf.  Petitioner provides no explanation as to how his trial counsel failed to preserve these issues for appeal, nor does he explain how the outcome of his trial would have been different had his trial counsel preserved them differently.

As pointed out by Respondent, Petitioner's trial counsel's ineffectiveness can only be based on his counsel's conduct at trial and cannot relate solely to the outcome of Petitioner's direct appeal.  ECF No. 17 at 35.  To the extent Petitioner claims that these issues should have been raised by his counsel on direct appeal, Petitioner's claim cannot provide a basis for an ineffective assistance of his trial counsel.  Petitioner's post-conviction counsel was not ineffective for failing to raise this non-meritorious claim with the motion court.  Therefore, the Court will deny Petitioner habeas relief on Claim 20.

### Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Darion Lamont Lee's first amended petition for a writ of habeas corpus relief is **DENIED**.  ECF No. 14.

**IT IS FURTHER ORDERED** that a certification of appealability shall not be issued.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 27th day of September, 2023.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

33